**Affirmed in Part and Reversed and Rendered in Part and Opinion filed October 23, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00214-CR

---

### ROBERT WAYNE MCCOMBS, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 69743**

---

### O P I N I O N

Appellant Robert Wayne McCombs appeals seven convictions of aggravated sexual assault of his two youngest children. In fourteen appellate issues, he lodges four categories of complaints, arguing (1) insufficiency of the evidence to support two of the seven convictions; (2) the trial court erred because it did not immediately require the state to make an election connecting six specific acts to six counts in the indictment; (3) with respect to five counts the trial court's charge to

the jury permitted a non-unanimous verdict; and (4) the trial court abused its discretion by admitting evidence of extraneous acts of abuse towards his oldest daughter, requiring reversal of all seven convictions. We reverse the trial court's judgment as to count seven and render a judgment of acquittal as to this count because the evidence is legally insufficient to support the conviction on this count. We affirm the remainder of the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Initially appellant was charged in a single indictment with nine counts. In each count appellant was charged with the aggravated sexual assault of one of his three daughters, each of whom was under fourteen at the time of the alleged offenses. The State amended the indictment to delete the first two counts, in which appellant's eldest daughter, Selena, was the complainant.[1] The amended indictment charged appellant with seven counts of aggravated sexual assault. In each of the seven counts, appellant was charged with the aggravated sexual assault of either Janet or Jasmine, appellant's two younger daughters, who are twins.[2]

Appellant pled "not guilty" and elected to have a jury trial. During the guilt/innocence phase, the twin daughters and their outcry witness testified about various instances of sexual misconduct:

- Janet testified as to appellant's acts of vaginal digital penetration that occurred in appellant's bedroom when Janet was laying on her back. She testified that when laying on the bed appellant would perform frontal digital penetration, then he would *ask her to turn around.* Janet testified as to appellant's

---

[1] To protect the privacy of the child-complainants, we identify them by the pseudonyms "Janet" and "Jasmine"; we similarly refer to their older sister using the pseudonym "Selena." Selena testified as a witness in this case.

[2] Janet was the complainant in the first three counts. Jasmine was the complainant in the last four counts.

recurrent acts of anal digital penetration that occurred in appellant's bedroom when Janet was asked to turn around. She testified that after frontal digital penetration, he would *ask her to turn around*, wherein he would put his finger "where she goes poop from."

- Janet testified that appellant would tell her to put his penis in her mouth. Though her testimony did not exclude the possibility that she was referring to recurrent acts, it suggested that in at least one instance she felt "it did not taste right," and "she wanted to leave." Jasmine testified that appellant touched her "where she would go pee at" with his fingers. At trial she did not remember if it happened once or more than once. Kristi Belluomini, her outcry witness, testified that Jasmine said occurred about five times.[3] Selena, Jasmine's older sister testified that she witnessed an incident involving Jasmine and appellant in appellant's bedroom.

- Belluomini testified that Jasmine told her that appellant "put his finger in her butt." Jasmine testified that everything she told her outcry witness was true.

- Belluomini, Jasmine's outcry witness, testified that Jasmine said "[appellant] was laying on his bed and that [Jasmine] described sitting on top of [appellant]. Because I asked has his thing gone anywhere else and [Jasmine] said yes, in my thing. And that's when she said he was laying on the bed. She was sitting on him and described his body moving up and down and that when he stopped she said she got up off him and went to the bathroom and that's when the white stuff was coming out of her thing."

On the morning of the second day of trial in the guilt/innocence phase, appellant filed a written request for the court to require the State to elect a specific act upon which it would rely for conviction. In the motion appellant did not identify a specific count or counts for which he sought election, but he specifically requested the trial court to instruct the jury that it must find unanimously that

---

[3] Kristi Belluomini is a forensic interviewer with Brazoria County Alliance for Children.

appellant was guilty of "the single incident the state has elected it will prove."

Before the State rested, appellant's counsel orally requested that the court require the State to make its election. The court reminded appellant's counsel that the State had not yet rested. Immediately after the State rested, appellant's counsel re-urged the request for an election, stating "at this time we'd like the State to elect, according to the motion." The court responded that it would "take that up at the appropriate time." Appellant's counsel went on to call appellant's sister and appellant's ex-wife to testify.[4]

After appellant's ex-wife finished testifying in appellant's case-in-chief, the State made its election as to six of the seven counts and explained in detail why the State maintained it did not need to make an election as to Count Six. As to the other six counts, the State made the following elections:

> With respect to Count One, (alleging that on or about August 23, 2008, appellant intentionally or knowingly caused the penetration of Janet's sexual organ by appellant's finger), the State elected to rely upon the "incident where the [appellant] placed his finger into the thing she peed from and had [Janet] roll over and stick it into her bottom."

> With respect to Count Two, (alleging that on or about August 23, 2008, appellant intentionally or knowingly caused the penetration of Janet's anus by appellant's finger), the State elected to rely upon the "incident where the [appellant] placed his finger into the thing she peed from and had [Janet] roll over and stick it into her bottom."

> With respect to Count Three, (alleging that on or about February 1, 2008, intentionally caused penetration of Janet's mouth by appellant's sexual organ), the State elected to rely upon the "incident in where [Janet] talked about she didn't like the taste of [appellant's] semen in her mouth."

---

[4] Appellant's ex-wife was married to him at the time of the alleged offenses. She had testified in the State's case-in-chief.

With respect to Count Four, (alleging that on or about August 23, 2009, appellant intentionally or knowingly caused the penetration of Jasmine's sexual organ by appellant's finger), the State elected to rely upon the incident in which Jasmine "was up in dad's bedroom in Rosharon, Texas" and "was laying on her back, and she had pajamas on."

With respect to Count Five, (alleging that on or about August 23, 2009, appellant intentionally or knowingly caused the penetration of Jasmine's anus by appellant's finger), the State elected to rely upon the incident in which Belluomini testified that Jasmine described appellant had put his finger "in [Jasmine's] butt."

With respect to Count Seven, (alleging that on or about March 15, 2011, appellant intentionally or knowingly caused the penetration of Jasmine's sexual organ by appellant's finger), the State elected to rely upon the incident that "took place in the master bathroom in the same house in Rosharon, Texas" involving Jasmine.

After the State's elections, appellant presented the remainder of his case, calling seven more witnesses. Appellant denied engaging in any of the conduct alleged in any of the seven counts. He claimed that he was incapable of getting an erection without using the drug Viagra. According to appellant, at the time of the alleged offenses, his wife had a boyfriend and was preparing to leave him. Appellant stated that Selena resented him for being a disciplinarian and that Selena wanted to obtain child support for caring for Janet and Jasmine.[5] Appellant testified that Jasmine and Janet were coached and coerced by their mother and their older sister Selena. Appellant attributed the complainants' knowledge of sexual matters to being exposed to pornography on the internet at a young age.

At the charge conference the trial court presented the proposed charge,

---

[5] Appellant's brother testified that Selena had said something to the effect that Selena would receive child support for caring for Janet and Jasmine if appellant were convicted of aggravated sexual assault. Appellant did not assert that his ex-wife wanted to obtain child support for caring for Janet and Jasmine.

which included language that tracked the State's elections and added limiting language to Count Three, leaving only Count Six with no factual specification beyond the allegations in the indictment. Appellant objected to the State's proposed charge language regarding the elections as improperly interjecting witness testimony into the charge, and generally objected that the charge did not comply with the *Phillips* case. *See Phillips v. State*, 193 S.W.3d 904, 908–12 (Tex. Crim. App. 2006). Appellant did not object on the basis that the charge would allow for a non-unanimous verdict as to any of the counts; instead, appellant asked the trial court to change the charge so that it asked the jury to determine appellant's guilt or innocence as to four counts rather than seven counts.

In the charge the trial court gave the jury, the trial court asked the jury to determine appellant's guilt or innocence as to each of the seven counts, as modified by the State's six elections, and the trial court modified the election language that referred to witness testimony. The charge included language on each count instructing the jury that its verdict must be unanimous.

The jury found appellant guilty on each of the seven counts. At the end of the punishment phase, the jury assessed punishment at life imprisonment and a $10,000 fine for each count. The trial court sentenced appellant in accordance with the jury's assessment of punishment and ordered the sentences to run concurrently.

## II. ISSUES AND ANALYSIS

### A. Does sufficient evidence support the convictions on Counts Five and Seven?

Under his first issue, appellant challenges the sufficiency of the evidence to support his conviction under Count Five, alleging digital penetration by appellant of Jasmine's anus on or about August 23, 2009. Under his second issue, appellant challenges the sufficiency of the evidence to support his conviction under Count

6

Seven, alleging digital penetration of Jasmine's vagina on or about March 15, 2011, and as narrowed by the State's election, an incident in which the penetration occurred in the bathroom.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Torres v. State*, 424 S.W.3d 245, 251 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Rather, the verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen, by any means. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(i), (a)(2)(B) (West 2011).

7

## 1. *Count Five*

Count Five of the amended indictment alleged that appellant intentionally or knowingly caused the penetration of the anus of Jasmine, a child who was then younger than fourteen years of age, by appellant's finger.

In his first issue, appellant asserts that trial evidence is insufficient to prove the penetration of Jasmine's anus because at trial when Jasmine was asked if her father ever touched her "butt," she replied "no." But, this testimony does not make the evidence legally insufficient because we presume that the jury discredited Jasmine's testimony that appellant never touched her "butt." *See Turro*, 867 S.W.2d at 47; *Carr v. State*, 477 S.W.3d 335, 339 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). In addition, Belluomini (Jasmine's outcry witness) testified that Jasmine told her that appellant "put his finger in [Jasmine's] butt." Jasmine also testified that everything she told her outcry witness was true. Under the applicable standard of review, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the penetration of the anus of Jasmine, a child who was then younger than fourteen years of age, by appellant's s finger. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that outcry evidence, even if contradicted at trial, retains probative value sufficient to prove an element of indecency with a child). Because the evidence is sufficient to support appellant's conviction based on Count Five, we overrule appellant's first issue.

## 2. *Count Seven*

Count Seven of the amended indictment alleged that appellant intentionally or knowingly caused the penetration of the sexual organ of Jasmine, a child who then was younger than fourteen years of age, by appellant's finger. The charge stated "you must not find [appellant] guilty of this offense/count unless you all

agree on which incident or incidents occurred beyond a reasonable doubt. . .The State has elected to rely upon the incident in which the penetration occurred in the bathroom, if said incident occurred, to prove this Count."

Appellant asserts that the evidence is legally insufficient to support the conviction as to Count Seven because there is no evidence that the conduct alleged in Count Seven transpired in the bathroom.

Neither party contends that the trial evidence is legally sufficient to support a finding that any conduct like that alleged in Count Seven occurred in the bathroom, and we have not found any such evidence. Conceding there was no evidence as to where the act occurred, the State argues that this absence of evidence is immaterial. Case law on this point suggests otherwise.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the [charging instrument], does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was on trial." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Our reliance on the hypothetically correct jury charge "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.*

When one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, upon timely request by the defendant, the State must elect the act upon which it

9

will rely for conviction. *See Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017). In today's case one particular act of sexual assault was alleged in Count Seven of the indictment, and the trial evidence showed more than one incident of this act of sexual assault. As to Count Seven, the State elected the following purported act upon which the State relied for conviction: the incident in which the conduct alleged in Count Seven occurred in the bathroom.

The parties have not cited and research has not revealed a case addressing whether the State's election of the act upon which the State is relying for conviction means that the hypothetically correct jury charge requires proof beyond a reasonable doubt of the act elected by the State. A defendant may request that the State make this election for at least these reasons:

- to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;
- to ensure a unanimous verdict; and
- to give the defendant notice of the particular offense upon which the State intends to rely for prosecution and afford the defendant an opportunity to defend.

*Cosio v. State*, 353 S.W.3d 766, 775 (Tex. Crim. App. 2011). When the State elects the act on which it is relying for conviction, the defendant is entitled to an instruction charging the jury to consider only the elected act in deciding guilt. *Isenhower v. State*, 261 S.W.3d 168, 176 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

If the State's election of the act upon which the State is relying for conviction did not mean that the hypothetically correct jury charge requires proof beyond a reasonable doubt of the act elected by the State, important purposes

10

behind the election procedure would be vitiated, and the hypothetically correct charge would not "adequately describe[] the particular offense for which the defendant was on trial." *Malik*, 953 S.W.2d at 240. We conclude that the State's election of the alleged act in the bathroom as the act upon which the State is relying for conviction under Count Seven means that the hypothetically correct jury charge for Count Seven requires proof beyond a reasonable doubt of the alleged act in the bathroom. *See id.*; *Cosio*, 353 S.W.3d at 775. This conclusion does not impose an onerous burden on the State, which makes this election after the State has rested its case-in-chief, thus allowing the State to elect one of the acts proved by the evidence in the State's case-in-chief. *See Owings*, 541 S.W.3d at 150.

The State argues that requiring proof of the alleged act in the bathroom creates a material variance between the charge and proof regarding the location of the offense. A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). But Count Seven of the amended indictment does not state that the alleged offense occurred in the bathroom. Thus, requiring proof of the alleged act in the bathroom under the hypothetically correct charge does not create a discrepancy between the allegations in Count Seven and the evidence at trial. We conclude that the material-variance line of cases does not apply in this context. *See id.*; *Johnson v. State*, 364 S.W.3d 292, 298–99 (Tex. Crim. App. 2012). In the alternative, even if this line of cases does apply, we conclude that there is no material variance. *See id.*

Evidence showed that the conduct described in Count Seven occurred multiple times; the State elected to seek conviction based on the purported incident in which the conduct alleged in Count Seven occurred in the bathroom. Though

11

the record contains evidence that the conduct alleged in Count Seven occurred elsewhere, Jasmine's testimony indicated that no such conduct occurred in the bathroom, and no trial evidence showed that any such conduct occurred in the bathroom. Viewing the trial evidence in the light most favorable to the jury's verdict, we conclude that no rational trier of fact could have found beyond a reasonable doubt that the conduct alleged in Count Seven occurred in a bathroom. Therefore, the evidence is legally insufficient to support appellant's conviction under Count Seven. Accordingly, we sustain appellant's second issue, reverse the trial court's judgment as to the offense alleged in Count Seven, and render a judgment of acquittal as to this offense. *See Dobbs v. State*, 434 S.W.3d 166, 173–74 (Tex. Crim. App. 2014).

**B. Did the trial court reversibly err in failing to require elections as to Counts One, Two, Three, Four, Five, and Seven at the close of the State's case-in-chief?**

In appellant's third, fourth, fifth, sixth, seventh, and eighth issues, appellant asserts that the trial court erred in failing to require the State to make its elections at the close of the State's case-in-chief. The State did not make its election until after the second witness had testified in appellant's case-in-chief.

*1. Preservation of Error*

As a threshold matter, we consider whether appellant preserved error. To preserve these complaints for appellate review, appellant had to communicate these complaints to the trial court by a timely request, motion, or objection stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of each complaint, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1; *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). Appellant also had to secure an express or implied ruling or

object to the trial court's refusal to rule. *See* Tex. R. App. P. 33.1; *Pena*, 285 S.W.3d at 463–64.

A general or imprecise objection may suffice to preserve error for appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel. *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("When the objection is not specific, and the legal basis is not obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal."); *Vasquez v. State*, 483 S.W.3d 550, 556 (Tex. Crim. App. 2016).

Immediately after the close of the State's case-in-chief, appellant lodged a generic request that the State make an election and referred to his written objection. But in "Defendant's Motion to Require the State to Elect a Specific Act it Will Rely Upon," appellant failed to identify the count or counts for which it sought an election. In the context of this seven-count case, the request was not specific. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (concluding that appellant failed to preserve his complaint as to the alleged state-constitutional unanimity violation because appellant's "general request to have the State elect as to the 'counts'" did not put the trial court or State on notice that appellant was demanding the State choose among the particular incidents upon which the State wanted to rely to convict appellant). Those on the receiving end of the communication could have read it either as a request for an election on a single *unspecified* count, or as a request that all the counts be subsumed into a single count (i.e., effectively a request for dismissal of six counts). The ambiguity clouded the legal basis of appellant's request for an election.

When the trial judge agreed to take the matter up "at an appropriate time," and instructed the appellant to proceed with his case, appellant did not complain

13

that the election had to be made at the close of the State's case-in-chief. Without voicing any objection to the trial court's postponing this matter, appellant called his first witness. After appellant presented the first two of the nine witnesses called in his case-in-chief, the State made elections as to all counts except Count Six. On this record, we conclude appellant failed to communicate these complaints to the trial court by a timely request, motion, or objection stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. *See Pena*, 285 S.W.3d at 463–64.

### 2.  *Harm analysis*

Even presuming for the sake of argument that error had been preserved and that the trial court erred in failing to require the State to elect the act on which it was relying for conviction before appellant began his case-in-chief, we conclude that any error would be harmless.

The parties have not cited and research has not revealed a Texas case outlining a harm analysis for this type of error. We presume, without deciding, that any such error would be a constitutional error subject to the same harm analysis applied to a trial court's error in failing to require the State to make this election at any time. *See Owings v. State*, 541 S.W.3d 144, 150–54 (Tex. Crim. App. 2017). Under this standard, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See id*. at 150. We make this determination by analyzing the error in the context of the following four purposes underlying the election requirement:

(1)  to protect the accused from the introduction of extraneous offenses;

(2)  to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;

14

(3) to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred; and

(4) to give the defendant notice of the particular offense upon which the State intends to rely for prosecution and afford the defendant an opportunity to defend.

*Id*. To find beyond a reasonable doubt that the trial court's erroneous failure to require the State to make an election before appellant began his case-in-chief was harmless (that is, it did not contribute to the conviction), we must determine that the four purposes behind the election requirement still were met. *See id*. at 150–51.

We first consider whether the trial court's error undermines the first purpose of protecting appellant from the introduction of extraneous evidence. The State presented evidence of extraneous offenses in its case-in-chief. As was the case in *Owings*, appellant was not entitled to be protected from the evidence of extraneous offenses involving Janet and Jasmine. *See* Tex. Code Crim. Proc. Ann. art. 38.37; *Owings*, 541 S.W.3d at 151. Similarly, as discussed in section II.D. below, appellant was not entitled to protection from the introduction of evidence of extraneous offenses that appellant committed against Selena. *See* Tex. Code Crim. Proc. Ann. art. 38.37. The trial court gave the following limiting instruction:

> You are instructed that there is testimony before you in this case regarding the defendant having committed other crimes, wrongs, or acts against the child who is the victim of the alleged offense. These are called extraneous acts. You cannot consider testimony of extraneous acts, if any, for any purpose unless you "first find and believe beyond a reasonable doubt that the defendant committed any such extraneous acts and even then, you may only consider the same in determining the state of mind of the defendant and the children, [Janet] or [Jasmine], or the previous and subsequent relationship that existed between the defendant and the children, [Janet] or [Jasmine], if any.

15

> You are further instructed that if there is any evidence before you concerning alleged offenses against a child under seventeen years of age, other than the victim alleged in each Count of the indictment, such offense or offenses, if any, may only be considered if you first believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and then you may consider said evidence for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

This instruction sufficed to make the jury aware that evidence of acts of sexual abuse other than those alleged in the indictment, could be considered only for the limited purpose stated in the instruction. Thus, the trial court's error did not prevent the first purpose from being met. *See Owings*, 541 S.W.3d at 151.

We next consider whether the trial court's failure to require the State to make an election before appellant began his case-in-chief undermines the second purpose of minimizing the risk that the jury might choose to convict (not because one or more crimes were proved beyond a reasonable doubt) because evidence of all of the crimes together convinced the jury of the defendant's guilt. Appellant does not take exception to any specific conduct; he does not, as part of his defense, attempt to isolate any particular event as not occurring. Instead, he denies that any sexual abuse occurred. Either Jasmine or Janet testified as to the offenses charged in Counts One through Six with sufficient detail to prove the conduct in question occurred. As to Count Seven, there is nothing in the record to suggest that the delay in the State's election contributed to the jury's finding of guilt in the absence of legally sufficient evidence to support that finding. On this record, there is no risk that the jury found appellant guilty of an offense charged in Counts One through Six that was not proven beyond a reasonable doubt. *See id.* at 151–52. The trial court's error did not prevent the second purpose from being met.

16

We next consider whether the trial court's failure to require the State to make an election before appellant began his case-in-chief undermines the third purpose of ensuring a unanimous verdict. The seven alleged offenses submitted in the court's charge and the State's six elections focused the jury on the alleged criminal conduct for each offense. Given that appellant's defense was that the sexual abuse did not occur at all, there is "no remotely significant risk" of a non-unanimous verdict. *See id*. at 153. The trial court's error did not prevent the third purpose from being met.

We next consider whether the trial court's failure to require the State to make an election before appellant began his case-in-chief undermines the fourth purpose of giving the defendant notice of the particular offense upon which the State intends to rely for prosecution and affording the defendant an opportunity to defend. The State's elections after the second witness testified in appellant's case-in-chief gave appellant notice of the act upon which the State was relying for conviction. Appellant never asked to call either of these two witnesses again, after the State made its elections. There is nothing in the record to suggest that appellant's defense was hampered in any way by the delay in the elections. Appellant's defense was the same as to each alleged offense — that no sexual abuse occurred at all. Appellant did not have different explanations for the different incidents. He had no alibi for any of the alleged incidents. We conclude that the trial court's error did not prevent the fourth purpose from being met.

Presuming for the sake of argument that appellant preserved error and that the trial court erred in failing to require the State to elect the act on which it was relying for conviction before appellant began his case-in-chief, we are satisfied beyond a reasonable doubt that any such error did not contribute to appellant's conviction and was harmless. *See Owings*, 541 S.W.3d at 150–54. Accordingly,

17

we overrule appellant's third, fourth, fifth, sixth, seventh, and eighth issues.

## C.  Did the court's charge for Counts One, Two, Three, Four, and Five, include an erroneous instruction that permitted a non-unanimous verdict?

Because the State elected the act upon which the State was relying for conviction for Counts One through Five, appellant stood entitled to an instruction charging the jury to consider only the elected acts in deciding guilt and limiting the jury's consideration of the other, unelected acts to the purposes for which evidence of those acts were admitted.  *See Isenhower*, 261 S.W.3d at 174.

In appellant's ninth, tenth, eleventh, twelfth, and thirteenth issues, appellant asserts that the trial court erred in instructing the jury on the first five counts because the court's instructions lacked the necessary specificity to ensure a unanimous verdict. In this context, to test the sufficiency of the charge we ask whether the charge allowed for the possibility that the jury could render a non-unanimous verdict. *See Cosio*, 353 S.W.3d at 774.  The essential question is whether the jurors could have relied upon separate incidents to find appellant guilty on a given charge. *Id.*

At the charge conference, appellant objected to the charge on the basis that the State's elections were tied too closely to the evidence.  Appellant also complained in a general sense that the charge did not satisfy the election requirements set forth in *Phillips* because the charge lacked detail.  Yet, appellant admits that he did not make the objection that the State's election was vague and that he did not specifically complain that the charge permitted a non-unanimous verdict.  Appellant proposed that "Counts One and Two of the State's charge" and "Counts Four, Five, and Six" be merged—that each group respectively be "reduced" to a single count.

At the charge conference, appellant did not voice the specific jury-error

18

complaints that he now asserts on appeal. Because appellant did not raise these complaints at the charge conference, any reversal based on the alleged charge error requires a showing of egregious harm. *See Cosio v. State*, 353 S.W.3d at 777; *Isenhower*, 261 S.W.3d at 176.

We presume, without deciding, that the trial court's charge contains the errors alleged on appeal as to each of the first five counts, and we determine whether the purported charge error constituted egregious harm under *Almanza*. *See Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984).

An egregious-harm determination must be based on a finding of actual rather than theoretical harm. For actual harm to be established, the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) and *Almanza*, 686 S.W.2d at 172). When assessing harm based on the particular facts of the case, we consider: (1) the entire jury charge; (2) "the state of the evidence[,] including contested issues and the weight of the probative evidence"; (3) the parties' arguments; and (4) all other relevant information in the record. *Isenhower*, 261 S.W.3d at 176.

Each of the five counts at issue contained a preliminary instruction about unanimity, which stated, "You must not find the defendant guilty of this offense/count unless you all agree on which incident or incidents occurred beyond a reasonable doubt. You need not all agree on every incident, as long as there is one incident on which all the jurors are unanimous."

The charge submitted to the jury included preliminary instructions containing a limiting instruction pertaining to certain extraneous-offense acts presented at trial. The court also gave similar limiting instructions during the

19

presentation of evidence, and invited counsel to request such instructions.

The trial court notified the jury of the State's elections in the jury charge and took steps to further narrow discernable acts to avoid the possibility of a non-unanimous verdict. Except for Count Five, the jury heard testimony directly from the respective complaining parties describing appellant's acts in a manner consistent with the acts elected by the State.

Appellant's defense was that he did not commit any of the acts and that his children and ex-wife were lying. Ultimately, appellant's case depended on his credibility and the discrediting of his daughters, son, and ex-wife. He did not have different explanations for the different incidents. He had no alibi for any of the incidents the complainants described. *See Owings*, 541 S.W.3d at 153. It is logical to suppose that the jury unanimously agreed that appellant committed separate instances of criminal conduct during the discrete instances identified by Jasmine, Janet, and their supporting witness. *See id*.; *Cosio v. State*, 353 S.W.3d 778.

Based on our review of the record, we cannot conclude appellant suffered egregious harm based on the charge errors appellant asserts on appeal. *See Owings*, 541 S.W.3d at 153; *Cosio v. State*, 353 S.W.3d 778. Accordingly, we overrule appellant's ninth, tenth, eleventh, twelfth, and thirteenth issues.

**D.  Did the trial court err in allowing the extraneous-offense testimony of Selena over appellant's objection to this evidence?**

In his fourteenth issue, appellant complains that the trial court erred in admitting extraneous-offense evidence that appellant sexually assaulted Selena, his oldest daughter. Appellant asserts the admission of evidence violated Texas Rule of Evidence 403, under which the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice,

confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.  Tex. R. Evid. 403.

Following a hearing under Texas Code of Criminal Procedure article 38.37, section 2-a, the trial court permitted Selena to testify about her experiences of appellant's sexual abuse.  Selena testified to various incidents occurring when she was younger, when appellant sexually assaulted her, including acts of digital penetration of her anus and vagina, compelling oral sex, and attempting to have sex.  She recalled the last time it occurred at the Rosharon house.  Selena testified that she successfully terminated the conduct by refusing appellant when living at the Rosharon house.  She stated:

> I was asleep on the couch and he was sitting beside me. I was laying down. And he reached in between my legs and I told him no. We're done. I'm not doing this any more. And he replied with the comment of, ["]Do you want me to be like a neutered rabbit?["] She said she then left the room.

Under article 38.37, section 2, notwithstanding Texas Rules of Evidence 404 and 405, and subject to article 38.37, evidence that a defendant has committed certain offenses against a child may be admitted in the trial of a defendant for indecency with a child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37 § 2(b) (West, Westlaw through 2017 1st C.S.).  Appellant does not complain on appeal that the trial court failed to comply with article 38.37, section 2-a, that the trial court erred in applying article 38.37, section 2 to the evidence of extraneous sexual assaults of Selena, or that the evidence of the extraneous sexual assaults of Selena was not relevant under article 38.37, section 2. Thus, we presume, without deciding, that the trial court complied with article 38.37, section 2-a, that the trial court did not

err in applying article 38.37, section 2 to the extraneous sexual assaults of Selena, and that the evidence of the extraneous sexual assaults to Selena was relevant under article 38.37, section 2. Appellant argues that the ruling violated Rule 403. *See* Tex. R. Evid. 403.

### 1.    Preservation of Error

At the 38.37 hearing, following the presentation of Selena's examination outside the presence of the jury, appellant objected that "the probative value of this testimony is outweighed by its prejudicial effect." Appellant argued that the Sate was trying to paint him as a criminal generally. Although the trial court did not explicitly rule on this objection, the trial court announced that the "State has provided sufficient proof to show this should be admissible under 38.37. It will be admitted for relevant matters, including the character of [appellant] and acts performed in conformity with the character of [appellant]." Appellant did not object to Selena's testimony at the time she was called to testify.

We presume, without deciding, that appellant preserved error in the trial court and that he timely raised a Rule 403 objection to the admission of evidence of the extraneous sexual assaults of Selena.

### 2.    Applicable Law

We review the trial court's decision to admit evidence for abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). When evidence of a defendant's commission of one of the offenses listed in article 38.37, section 2(a) is relevant under article 38.37, the trial court still must conduct a Rule 403 balancing test upon proper objection or request. *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues,

misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403; *Distefano*, 532 S.W.3d at 31. When reviewing a trial court's ruling on a Rule 403 objection, we presume the trial court performed a Rule 403 balancing test and determined that the evidence was admissible. *See Distefano*, 532 S.W.3d at 31. We also presume that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *See id*. at 32. Appellant must shoulder the burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *See id*.

The Court of Criminal Appeals has cautioned that in reviewing the trial court's Rule 403 balancing determination, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Courts must balance the inherent probative force of the proffered evidence along with the proponent's need for that evidence against (1) any tendency of the evidence to suggest decision on an improper basis, (2) any tendency of the evidence to confuse or distract the jury from the main issues, (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may blend together in practice. *Id*. at 542.

*Probative value of the evidence and strength of need for the evidence*

Appellant concedes the probative value of Selena's testimony of her own abuse at appellant's hands. Selena's testimony serves the purposes in this case created by Article 38.37, to permit the jury to consider the character of the appellant and demonstrate that he had performed such acts as to a similarly situated

person. Selena's testimony regarding the last incident she experienced in Rosharon, where she refused appellant's advances, provides evidentiary support for appellant's state of mind and decision to direct his focus to Janet and Jasmine at that time.

The State demonstrated a need for the extraneous-offense testimony from Selena. The State's primary source of evidence came from the two complainants, who were mentally impaired adolescent girls, testifying about incidents occurring years before when they were children. The long delay of their outcry prevented any useful medical evidence. *See Gaytan v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (lack of physical evidence is a basis for needing evidence of extraneous acts). This factor weighs in favor of admission.

*Tendency of the evidence to suggest decision on an improper basis*

Appellant argues that the admission of this evidence caused the jury "to become so prejudiced as to not consider the evidence" and points to the absence of evidence to support appellant's conviction as to the offense charged in Count Seven. We do not make that connection.

Although the incidents Selena recounted—various sexual assaults of a minor—by their nature tend to inflame, the acts that Selena described were no more serious than the acts recounted by Jasmine and Janet that form the basis of the amended indictment. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). The extraneous offenses were similar to the indicted offenses when considering variables such as the age of the victim, the incestual nature of the act, and the form of coercion used by the appellant. This factor weighs in favor of admission. *Id*.

24

*Tendency of the evidence to confuse or distract the jury from the main issues*

Appellant does not assert that the extraneous sexual assaults of Selena had any tendency to confuse or distract the jury from the main issues. Selena's testimony was not confusing, and it was relevant to whether appellant committed the offenses charged in the indictment. This factor weighs in favor of admission. *See id.* at 220-21.

*Tendency of the evidence to be given undue weight*

Nothing indicates that the jury would give Selena's testimony undue weight. This factor weighs in favor of admission. *See id.*

*Likelihood that the presentation of the evidence would consume an inordinate amount of time or merely repeat evidence already admitted*

Appellant complains that the State took a significant amount of time to develop Selena's allegations and notes that she was one of seven witnesses called by the State. This factor focuses not on the number of witnesses, but the time consumed by the presentation of the evidence. Actual time, or failing that, the relative number of pages in the reporter's record may be a more useful metric. The record lacks any indication that Selena's testimony duplicated evidence already (or even later) admitted. The testimony (about 33 pages in the reporter's record) measured against the total pages comprising of all the witnesses called by the State (about 230 pages of testimony) did not consume an "inordinate amount of time." This factor weighs in favor of admission. *See id.* at 221.

*Conclusion of Balancing Test*

Under the applicable standard of review, we conclude that the trial court did not abuse its discretion in determining that a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative

evidence did not substantially outweigh the probative value of the extraneous-offense evidence regarding appellant's sexual abuse of Selena. *See Distefano*, 532 S.W.3d at 31–34; *Robisheaux*, 483 S.W.3d at 217–21; *Gaytan*, 331 S.W.3d at 226–28. Accordingly, we overrule appellant's fourteenth issue.

### III. CONCLUSION

Under the applicable standard of review, we conclude that no rational trier of fact could have found beyond a reasonable doubt that the conduct alleged in Count Seven occurred in a bathroom and that the evidence is legally insufficient to support appellant's conviction under Count Seven. Accordingly, we reverse the trial court's judgment as to the offense alleged in Count Seven, and render a judgment of acquittal as to that offense. Having overruled appellant's remaining issues, we affirm the remainder of the trial court's judgment.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.
Publish — TEX. R. APP. P. 47.2(b).

26