**Affirmed as Modified and Memorandum Opinion filed October 12, 2021.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-19-00237-CR**

**RYAN COLEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1619943**

## MEMORANDUM OPINION

Appellant Ryan Coleman appeals his conviction for aggravated sexual assault. After a jury convicted appellant, the trial court assessed his punishment at 70 years in prison. In a single issue, appellant contends that the trial court abused its discretion in denying his motion to suppress evidence of four alleged extraneous offenses involving other complainants because the prejudicial effect of that evidence substantially outweighed its probative value. We modify the trial court's judgment to delete an incorrect special finding that appellant waived his right to

appeal, and as so modified, affirm the trial court's judgment.

## *Background*

Complainant, who is from Honduras, testified that she was working as a dancer at a club in June 2015 when she met appellant at the club. When the club closed, complainant, a co-worker, appellant, and appellant's female friend all went to another bar. After consuming a drink that appellant's friend gave her, complainant said that her heart began to race, she felt dizzy, and she had to go to the restroom to vomit. Shortly thereafter, complainant and her coworker decided to leave, but when the coworker discovered that her car had been towed, appellant and his friend offered to give them a ride to complainant's apartment. Appellant, however, drove them instead to the apartment complex where he and his friend lived. The friend explained that they needed to pick something up first.

When they arrived at the complex, the friend showed complainant her apartment while complainant's coworker was outside talking to her boyfriend on her phone. The friend then informed complainant that appellant would be the one to take complainant home. Complainant followed appellant to his apartment. She said that she was not concerned at this point and thought he was just going to get his keys.

Once they entered appellant's apartment, appellant closed the door. Complainant immediately tried to open the door but found that there was a device on the doorknob that just spun in her hand, and she could not get the door open. Complainant told appellant to open the door, but he refused and began groping her. She pushed him away and told him no, but he started trying to remove her clothes. She then noticed a gun tucked into the waistband of appellant's pants. When he took the gun out, complainant ran to the bathroom, locked the door, and told him she was going to call the police, although she had left her phone in appellant's car.

2

Appellant pounded on the door and told her to open it. He then pried the door open with a kitchen knife. Still holding the knife, he fondled complainant and then grabbed her by her hair and threw her on the couch in the living room. Appellant offered her money, but she again told him no. Appellant began to kiss her on the neck while still holding the knife. He groped her and lay on top of her. Complainant tried to fight him off, but she said his weight was too much. She kept telling appellant no and that the police could arrive any moment. Appellant then forcibly penetrated complainant's vagina with his penis. Complainant said it was painful.

Afterwards, appellant placed a finger to his lips while holding the knife and told complainant to calm down. Appellant then opened the door, and they walked outside. Complainant began to run down the stairs, yelling for her friend who had apparently left. Appellant briefly grabbed complainant's hair, but she kept running, stopping only to grab her phone out of his car, and ran through the apartment complex's gate and across the street. She then called the police and watched as appellant got in his car and drove away quickly.

One of the officers who responded to the scene testified that complainant appeared traumatized and the apartment showed signs of a struggle. After the police arrived, complainant was taken to the hospital by ambulance. She was treated for pain, various bruises and abrasions were noted, and a tampon was removed from her vaginal vault. Later DNA analysis of a semen sample recovered from complainant could not exclude appellant as the source of the semen. In 2017, appellant was located in Arizona and extradited back to Texas.

At trial, defense counsel's opening statement and questioning focused on whether the sexual intercourse between complainant and appellant was consensual and on complainant's immigration status as a reason for why she may have

3

fabricated the charge. Defense counsel also elicited testimony that complainant had apparently stopped cooperating with the police investigation for a time. Complainant explained that this was because she was afraid.

When the State offered evidence regarding four other sexual assaults that appellant had allegedly committed against other women, the trial court held a hearing on appellant's motion to suppress that evidence. As will be discussed more fully below, each of these four allegations included elements similar to the alleged sexual assault of complainant. The trial court denied the motion to suppress but instructed the jury both orally and in the jury charge regarding their consideration of these extraneous offenses.

### *Standards of Review*

In his sole issue, appellant asserts the trial court erred in admitting the evidence of four extraneous offenses because the prejudicial effect of that evidence substantially outweighed its probative value. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Under Texas Rule of Evidence 404(b), evidence of a "crime, wrong, or other act" is not admissible to prove a person's character or that he acted in conformity with that character. Tex. R. Evid. 404(b)(1); *see also Metcalf v. State*, No. 14-19-00101-CR, 2020 WL 1880991, at *5 (Tex. App.—Houston [14th Dist.] Apr. 16, 2020, no pet.). Evidence that does not have relevance apart from character conformity is inadmissible. Tex. R. Evid. 404(b); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). However, evidence of extraneous offenses may be admissible for another purpose "such as proving motive, opportunity, intent,

4

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2); *see also Metcalf*, 2020 WL 1880991, at \*5. Moreover, extraneous offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime. *Casey*, 215 S.W.3d at 879. Here, the State argued that the challenged evidence was admissible to show intent as well as to rebut the defensive theories that the sexual intercourse was consensual and that complainant fabricated the sexual assault allegation to enhance her immigration status.

Appellant does not appear to challenge the relevance of the extraneous offense evidence for these purposes but instead argues that the evidence was in a sense "too relevant," i.e., that any value of the contested testimony was substantially outweighed by the danger of unfair prejudice and therefore should have been excluded pursuant to Texas Rule of Evidence 403. The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). However, evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Id.* All evidence tends to be prejudicial to one party or the other. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Metcalf*, 2020 WL 1880991, at \*5. Prejudice is "unfair" if it has an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 378. In conducting a rule 403 analysis, courts must balance (1) the inherent probative force of the proffered evidence and (2) the

5

proponent's need for that evidence, against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by the jury, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be cumulative of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Metcalf*, 2020 WL 1880991, at *5. The balance is always slanted toward admission, not exclusion, of otherwise relevant evidence. *De La Paz*, 279 S.W.3d at 343. We will examine each of these factors and how they relate to the extraneous offense evidence offered in this case.

## *Analysis*

**Probative value.** The term "probative value" refers to the inherent probative force of an item of evidence, i.e., how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation. *See Casey*, 215 S.W.3d at 879. As mentioned, the State sought admission of this evidence to show intent and to rebut defensive theories of consent and fabrication. To prove aggravated sexual assault in this case, the State was required to establish that appellant intentionally or knowingly engaged in sexual conduct with complainant without her consent. *See* Tex. Penal Code § 22.021(a)(1)(A)(i); *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When, as here, the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the complainant. *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). Such intent cannot be inferred from the mere act of sexual intercourse. *Id*.

The probative value of the evidence of other alleged sexual assaults of other complainants lies in its tendency to show that this complainant did not consent to the sexual activity in this case. *See Casey*, 215 S.W.3d at 882. When evidence of

6

an extraneous offense is offered to show intent, its relevance derives from the so-called "doctrine of chances," which "tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance." *De La Paz*, 279 S.W.3d at 347–48; *Sandoval v. State*, 409 S.W.3d 259, 300 (Tex. App.—Austin 2013, no pet.). For the doctrine to apply, there must be a distinct similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offenses probative weight. *Sandoval*, 409 S.W.3d at 300; *see also Casey*, 215 S.W.3d at 881. However, the similarity required is less when intent is the issue than when identity is the issue. *Rickerson v. State*, 138 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Appellant does not challenge the trial court's determination that the extraneous offenses in this case were distinctly similar to the charged offense. In making that determination, the trial court noted similarities between the charged offense and the extraneous offenses, including the similarity in age of all of the women, the "manner and means" of the assaults, meeting at or going to a club or strip club, and drinking alcohol. The court further noted that several of the women were either dancers at strip clubs or, in the case of one, a model at a bar. Each extraneous allegation did not include all these similarities but each did have similarities with the charged offense. We conclude that the probative value of the extraneous offense evidence weighs in favor of its admission. *See, e.g.*, *Rickerson*, 138 S.W.3d at 531–32 (holding extraneous offenses were sufficiently similar where each complainant was acquainted with appellant, was surprised by his actions, was around the same age, and alleged similar assaults).

**Need for the evidence.** The State's need for the extraneous offense evidence in this case stems from the fact that without such evidence, this case is largely a

7

he-said, she-said dispute. There were no eyewitnesses to the alleged sexual assault. Although bruises and abrasions were noted on complainant's person and one officer testified it appeared that there had been a struggle in appellant's apartment, the only testimony that these were the result of a sexual assault by appellant came from complainant. The DNA evidence suggested appellant and complainant may have had sexual intercourse but said nothing about whether it was consensual. Also, the defense suggested complainant fabricated the allegation to aid her immigration status.[1] Accordingly, we conclude that the State's need for the extraneous offense evidence in this case strongly supports admission of the evidence. *See, e.g.*, *McCombs v. State*, 562 S.W.3d 748, 767 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that State's need for extraneous offense evidence in sexual assault case stemmed from the fact the direct evidence was largely the complainants' testimony).

**Tendency toward improper basis.** Certainly, the testimony of four women alleging appellant sexually assaulted them possessed some tendency toward suggesting a decision on an improper basis; however, the trial court orally admonished the jury regarding the proper consideration of this evidence four times during the State's presentation and included a limiting instruction in the jury charge. This lessened the prejudicial impact of this factor. *See Banks v. State*, 494 S.W.3d 883, 894 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Accordingly, this factor somewhat favors exclusion of the extraneous offense evidence.

**Tendency to confuse or distract.** The extraneous offense evidence in this case was direct and very relevant to the issues of intent, consent, and fabrication. *See id.* Appellant does not raise any concerns regarding confusion or distraction.

---

[1] On cross-examination by defense counsel, complainant testified that a police officer informed her that as a complainant of criminal activity she could apply for a "U visa."

8

This factor weighs in favor of admission.

**Tendency for undue weight.** Appellant suggests that the repetitive nature of receiving evidence of four alleged extraneous offenses could lead the jury to assign undue weight to that evidence in determining appellant's guilt for the sexual assault of complainant. Although this is of some concern in this case, we again note that the trial court orally admonished the jury four times and instructed them regarding the proper consideration of this evidence in the jury charge. Moreover, as the trial court noted, the extraneous offense allegations were similar to and "no more heinous" than the allegations in the charged case.

**Presentation time.** Lastly, we note that the State took a considerable portion of the trial to present the extraneous offense evidence. Appellant estimates that this evidence took about one-fifth of the total time spent on the State's case-in-chief. Even the testimony in the suppression hearing occupied about 100 transcript pages. The time required is not surprising given that there were four extraneous offenses and each had to be proven beyond a reasonable doubt in order for the jury to consider it. *See Distefano v. State*, 532 S.W.3d 25, 38 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). This factor, however, does weigh somewhat against admission of the evidence.

**Conclusion.** Although the extraneous offense evidence in this case took a fair amount of time to present and had some tendency to suggest a decision on an improper basis and potentially to be assigned undue weight, given the strong probative value of the evidence, the State's need for that evidence, and the lack of any notable tendency of the evidence to confuse or distract the jury, the trial court's decision to admit the evidence was within the zone of reasonable disagreement. Accordingly, the trial court did not abuse its discretion in admitting the evidence under Rule 404(b). *See Gigliobianco*, 210 S.W.3d at 641–42; *Moses*,

9

105 S.W.3d at 627; *Metcalf*, 2020 WL 1880991, at \*5. We overrule appellant's sole issue.

We modify the trial court's judgment to delete the special finding, "Appeal waived. No permission to appeal granted," and affirm the judgment as so modified. *See* Tex. R. App. P. 43.2(b); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ("[A]n appellate court has authority to reform a judgment to . . . make the record speak the truth when the matter has been called to its attention by any source").

/s/     Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).