**Affirmed and Memorandum Opinion filed October 1, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00926-CR

**JEREMY HENDERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1542817**

## MEMORANDUM OPINION

Appellant Jeremy Henderson appeals his conviction by a jury of the second-degree felony offense of "assault of family member second and impeding breathing." In addition, the jury found true two punishment-enhancement allegations and sentenced appellant to sixty-five years' confinement. In six issues on appeal, appellant challenges the trial court's judgment of conviction. We affirm.

## I.  BACKGROUND

A grand jury indicted appellant for the second-degree felony offense of "assault of family member second offender and impeding breathing."[1] The State alleged that appellant assaulted his girlfriend ("complainant"), with whom appellant had a dating relationship, on February 13, 2017. The indictment further alleged that appellant was previously convicted of assault against a family member.[2] Appellant pleaded "not guilty" to the charged offense, and the case proceeded to trial.

In August 2016, the complainant began dating appellant. The complainant broke up with appellant several times because of appellant's anger and jealousy issues. By February 2017, the complainant had finally had enough and ended the relationship. On February 13, 2017, appellant called the complainant, and pleaded with her to meet with him to talk. Eventually, the complainant agreed, picked up appellant at his mother's house, and drove to a motel located on Hempstead Road, in Harris County, Texas, where they rented a room for a few hours. Once inside the room, appellant showed the complainant his chest where he had a tattoo of her name, and tried to give her a necklace as a Valentine's Day present. The complainant refused to accept the necklace because she was "finished with [the] relationship for good this time[,]" at which point appellant became jealous, angry, and accusatory. The complainant argued with appellant and, when she conceded that she had recently spoken to another man—her son's father—appellant "lost it" and flew into a rage. Appellant shouted at the complainant, "Bitch, I'm tired of you playing with my

---

[1] *See* Tex. Penal Code § 22.01(a)(1) (defining assault as "intentionally, knowingly, or recklessly causing bodily injury to another"), § 22.01(b-3) (elevating assault to second-degree felony if assault is committed against person whose relationship to or association with defendant is described by certain sections of Family Code); *see also* Tex. Fam. Code § 71.0021(b) (defining "dating relationship"), § 71.003 (defining "family" members).

[2] Appellant previously was convicted of family violence assault by impeding breathing on March 7, 2016, in Cause Number 1435390, in the 209th District Court of Harris County, Texas.

2

feelings, you always playing with my feelings[,]" as he began to punch her on her head and face. Appellant's blows knocked the complainant backwards onto the bed and dazed her. Before the complainant could react, appellant then got onto the bed and straddled her—using his weight to pin her down—and started forcefully choking her with his hands.

Appellant strangled the complainant to the edge of "blacking out" several times, but shocked her back into consciousness by biting her breasts and hand. At some point during the attack, the complainant told appellant that she needed to use the restroom. Appellant agreed to let her up, but when the complainant did not move quickly, he grabbed the complainant by her hair, dragged her to the bathroom, and then stood over her while she relieved herself. Without waiting for the complainant to rise from the toilet, appellant dragged the complainant out of the bathroom by her hair, threw her to the floor, kicked her in the stomach and back, and then punched her in the head again. Soon thereafter, the phone in the motel rang, as the front desk clerk called to alert appellant and complainant that their time was up and they needed to leave. Appellant emptied the contents of the complainant's purse, took her cellphone, house keys, ID and debit card, and then departed the room, leaving complainant in the room. The complainant checked the hallway to ensure that appellant was gone and then called 911 with the room phone. Police and emergency medical services ("EMS") personnel arrived and made contact with the complainant, whom they observed had "fresh" injuries and was crying and "frantic." EMS transported the complainant to a hospital, and after tests were performed, she was released.

Two days later, on February 15, 2017, the complainant went to the police station to provide a statement, pursue charges against appellant, and have her injuries

3

photographed. The police filed charges and, on March 4, 2017, arrested appellant for the assault and choking of the complainant on February 13, 2017.

The jury found appellant guilty as charged of "assault of family member second and impeding breathing, as charged in the indictment." The trial court then arraigned appellant on two enhancements, to which appellant pleaded "not true." The jury found both enhancement paragraphs (regarding 2004 aggravated assault with a deadly weapon conviction and 2013 felony assault of a family member conviction)[3] true. The jury assessed appellant's punishment at sixty-five years' confinement.

On October 11, 2018, the trial court entered the written judgment of conviction and sentence. On November 12, 2018, appellant filed a motion for new trial and motion in arrest of judgment, which were overruled by operation of law.

Appellant now appeals his conviction.

## II. ANALYSIS

Appellant presents the following six issues on appeal:

1) Did the trial court abuse its discretion in denying Appellant's motion for continuance?

2) Did the trial court err in denying Appellant's request for a hearing on his motion for new trial?

3) Did the trial court err in allowing, over Appellant's objection, the inclusion of the lesser-included offense of assault (second offense) in the jury charge?

---

[3] Appellant previously was convicted on aggravated assault with a deadly weapon on September 20, 2004, in Cause Number 980825 in the 180th District Court of Harris County, Texas. Additionally, appellant previously was convicted of felony assault of a family member on July 22, 2013, in Cause Number 1300768, in the 177th District Court of Harris County, Texas.

4) Did trial counsel render ineffective assistance of counsel when he failed to object to the introduction of Appellant's prior conviction for assault (family member)?

5) Did the trial court err in denying trial counsel's motion for mistrial when it was discovered that an alternate juror had participated in and voted during guilt-innocence deliberations?

6) Is the evidence sufficient to support Appellant's conviction?

## A. SUFFICIENCY OF THE EVIDENCE

We initially consider appellant's sixth issue in which he claims that the evidence is legally insufficient to support his conviction because, if sustained, that issue would afford the greatest relief. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating reviewing court should first address complaints that would afford the greatest relief).

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

We apply a legal-sufficiency standard of review in determining whether the evidence supports each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136–37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We consider all evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We will uphold the jury's

verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

We consider all evidence presented at trial, but we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the witness's credibility and the weight given their testimony, we resolve any evidentiary conflicts or inconsistencies in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) .

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge and as authorized in the indictment. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240). "The 'law as authorized by the indictment' includes the statutory elements of the offense and those elements as modified by the indictment." *Id*. (quoting *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013)). Our use of the hypothetically correct jury charge ensures a judgment of acquittal is reserved for cases in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge. *McCombs v. State*, 562 S.W.3d 748, 759 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Malik*, 953 S.W.2d at 240).

Such a charge in this case would state that a person commits the second-degree offense of assault family violence by impeding breathing if the person intentionally, knowingly, or recklessly causes bodily injury to an individual with whom the accused is in a dating relationship by impeding the normal breathing or circulation of the individual by applying pressure to the individual's throat or neck, while having a prior family violence conviction. *See* Tex. Penal Code §§ 22.01(a)(1); 22.01(b-3); Tex. Fam. Code Ann. § 71.0021(b).

## 2. THE EVIDENCE

From the complainant, the jury heard testimony that the complainant had dated appellant for six months, during that time they had broken up and gotten back together numerous times. She testified that she met with appellant on February 13, 2017, and after refusing a gift from appellant, rejecting appellant's suggestion to get back together, and mentioning that she had recently spoken to her child's father, appellant "lost it" and began hitting her. The complainant testified that appellant punched, hit, bit, dragged, and kicked her; she also testified that appellant choked her with both hands. When asked where exactly appellant put his hands, the complainant testified "[h]e put his hands on my throat, and he [sic] choking me, like, where I can't even breathe." When asked about how much pressure and pain appellant put on her neck and throat on a scale of one to ten, she testified, at a ten. The complainant testified she was "blacking out," and would open her eyes when appellant bit her. The complainant testified "[h]e choked me out, like, three or four times" and she was unable to breathe. She testified, "I thought I was going to die." Appellant attacked her for about an hour and half.

On cross-examination, the complainant admitted that after the incident on February 13, 2017, on a least two more occasions, she picked up appellant and went voluntarily with him to hotels. The complainant also conceded that after the incident

7

on February 13, 2017, she had a number of conversations with appellant about how to make their relationship better.

The jury also heard testimony from Deputy Sheriff Kathy Helstrom who testified that fingerprint lifts taken from appellant by Deputy Helstrom the day of trial were the same as fingerprint lifts included with a March 7, 2016 judgment from wherein appellant was convicted of "Assault Family House Member, IMPED, birth [sic]."

### 3. ANALYSIS

Appellant argues that the evidence is insufficient to support his conviction because the "evidence presented at his trial consisted of the bare allegation of the complainant." Appellant maintains that, because the complainant is the sole witness to the alleged conduct, this case is "a classic 'he said – she said' scenario." Appellant asserts that the complainant is an ex-girlfriend with whom he had a tumultuous relationship that continued for weeks after this alleged assault. Appellant further argues that witnesses who provided "corroborative" evidence of the assault allegation—*i.e.*, Officer Jose Guerra, Officer Jennifer Frank, and Garrett Webb—only did so by repeating what the complainant told them, *via* exceptions to the hearsay rule. Appellant asserts that no witnesses possessed independent knowledge of the facts surrounding the assault allegation; instead, they simply repeated, in open court, what the complainant told them. Appellant concedes that "while permissible under the rules of evidence," he contends "it is important to recognize and acknowledge that this is not cumulative evidence of guilt; it is merely a recitation of the complainant's story."

Here, the complainant testified about the assault and the pain she suffered from the strangulation by appellant. The complainant's testimony standing alone, detailing all of the essential elements of the charged offense, is sufficient to support

8

appellant's conviction. *See Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Zuniga*, 551 S.W.3d at 733.

Moreover, the complainant's testimony was corroborated by photographs of her injuries, as well as the testimony by the investigating officer and hospital nurse, who testified that the complainant's injuries were consistent with the events of the assault that the complainant described. *See Sanchez v. State*, 460 S.W.3d 675, 680–81 (Tex. App.—Eastland 2015), *aff'd*, 499 S.W.3d 438 (Tex. Crim. App. 2016) (finding sufficient evidence to support the defendant's domestic-violence assault conviction based on the complainant's testimony about the abuse, as well as the fact that photographs of the complainant's injuries supported her allegations of abuse). We do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams*, 235 S.W.3d at 750.

The record reflects that a rational juror could find beyond a reasonable doubt all the essential elements of the offense. *See Temple*, 390 S.W.3d at 360. We therefore hold that the evidence was sufficient to support appellant's conviction. We overrule appellant's sixth issue.

## B.    DENIAL OF MOTION FOR CONTINUANCE

In his first issue, appellant argues the trial court abused its discretion in denying appellant's motion for continuance.

### 1.    STANDARD OF REVIEW

The Code of Criminal Procedure provides: "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim.

Proc. art. 29.03.  We review a trial court's ruling to deny the defendant's pretrial motion for continuance under the abuse of discretion standard.  *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007).  We examine the circumstances presented to the trial court to determine whether the trial court abused its discretion.  *Guerrero v. State*, 528 S.W.3d 796, 800 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

To establish an abuse of discretion, an appellant must show that the trial court erred in denying the motion for continuance and that the denial actually and specifically prejudiced appellant's defense.  *See Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010).  That a party "merely desired more time to prepare does not alone establish an abuse of discretion."  *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (per curiam); *see also Gallo*, 239 S.W.3d at 764 (bare assertion regarding inadequate time to interview potential State's witness does not alone establish abuse of discretion).

### 2.    DEFENDANT'S MOTION FOR CONTINUANCE

On October 2, 2018,[4] appellant's trial counsel filed a written motion for continuance, acknowledging he had sought out and had reviewed discovery as the State provided it, "including 11 jail phone calls between Defendant and the complainant in this case."  He further asserted, however, that a 120-day continuance was necessary to provide effective representation of counsel to defendant because "within the last two weeks," the State had released to defense counsel over 200 "new jail calls" related to appellant.  Appellant's trial counsel argued in the motion that for him to render effective assistance of counsel he had to know the contents of the telephone calls to anticipate what evidence, impeachment or otherwise, the State might use in its case in chief and to ascertain if any of the contents of those calls

---

[4] Also, on October 2, 2018, appellant's trial counsel filed Defendant's Motion to Require the State to Designate which Jail Calls it will Offer into Evidence.

could provide impeachment or other exculpatory evidence.  The trial court denied defense counsel's motion for continuance by written order on October 3, 2018.

In a pretrial hearing on October 4, 2018, defense counsel re-urged appellant's motion for a continuance based on the lack of time to review the State's disclosure of approximately 240 jail phone calls related to appellant.  In response, the prosecutor for the State advised the trial court that, on September 18, 2018, the State provided defense counsel with 11 recordings of telephone calls that appellant made to the complainant while appellant was in jail.  She further represented that the 11 recordings provided on September 18, 2018, were the only calls the State planned to introduce into evidence because she believed they were the only calls between appellant and complainant.  Moreover, the prosecutor stated:

> And to my knowledge the other phone calls don't involve [the] complainant, but I have not listened to all of them because I don't intend to use any of them, but because we had them, I obviously wanted to give them to [the] defense.  But [the] complainant indicated to me that she doesn't recall talking to [appellant] other than on that number back in 2017.

With nothing further from counsel, the trial court denied appellant's reurged motion for continuance.  In doing so, however, the trial court also granted defense counsel's motion requiring the State to designate which jail calls it planned to offer into evidence.  In this regard, the trial court prohibited the State from offering as evidence any of appellant's jail calls other than the 11 calls between appellant and the complainant that the State previously had disclosed to the defense in September:

> All right.  And the court made a ruling yesterday that the State is prohibited from introducing any of the phone calls other than the 11 that were disclosed to the defense counsel, I think you said in early September.  You know, based on the number of phone calls, you know, phone calls will continue to come in to the jail if that's where a particular person is housed, so this will always continue to be an issue, it sounds like, in this particular case; therefore, that's why the State's

11

not permitted to introduce those. So, therefore, your motion for continuance again for the second time is denied.

### 3. ANALYSIS

On appeal, appellant argues that the trial court's denial of his motion for continuance was in error and he was harmed because it hindered his trial counsel's ability to prepare for trial and provide effective assistance of counsel. Appellant's motion sought "a minimum of 120 days" to review and summarize the over 200 "new jail calls" appellant made from the jail.

A review of the record demonstrates that the trial court did not abuse its discretion in denying appellant's motion for continuance. Appellant has not shown that the trial court erred in denying him a three-month continuance to allow defense counsel to review over 200 calls appellant had made from jail, which were disclosed by the State two weeks prior to the motion being filed, that the State represented to the court and counsel that it did not plan to use at trial, that the trial court expressly excluded the State from offering into evidence, which the State did not attempt to introduce at trial, and were not introduced at trial.

Additionally, appellant also has not that shown he was prejudiced by his counsel's alleged inadequate time for preparation. Appellant merely speculates that defense counsel's review of these additional calls may have revealed information favorable to appellant's case. Appellant, however, fails to identify a witness who might have been called to testify, evidence that might have been offered, or information that might have been beneficial to his case if the trial court had granted his counsel additional time to review the additional calls. It is well-settled that pure speculation, without any demonstration of actual harm, is insufficient to establish that the trial court reversibly erred in denying appellant's pretrial motion for continuance. *See Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006).

"Case-law requires more than . . . speculation to justify an appellate reversal of a case for a trial court's failure to grant a continuance." *Id*.; *see also Guerrero*, 528 S.W.3d at 800 ("[M]ere speculation about evidence that a defendant might have developed if the continuance were granted is not sufficient to demonstrate harm."); *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("Speculation will not suffice to obtain reversal for a trial court's failure to grant a continuance.").

Based on the record and circumstances as presented to the trial court, we conclude that appellant has not shown he was harmed by the denial of his motion for continuance such that the trial court abused its discretion. We overrule appellant's first issue.

## C. DENIAL OF HEARING ON MOTION FOR NEW TRIAL

In his second issue, appellant contends that the trial court erred in denying his request for a hearing on his motion for new trial.

### 1. STANDARD OF REVIEW

A trial court's decision to deny a hearing on a motion for new trial will not be overturned absent an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). The right to a hearing on a motion for new trial is not an "absolute right." *See, e.g., Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993); *Moore v. State*, 4 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Instead, a trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion (1) raises matters which are not determinable from the record and (2) establishes reasonable grounds showing that the defendant could potentially be entitled to relief. *Smith*, 286 S.W.3d at 339; *Rozell v. State*, 176 S.W.3d 228, 230

13

(Tex. Crim. App. 2005). To hold otherwise would deny the accused meaningful appellate review. *McIntire v. State*, 698 S.W.2d 652, 660 (Tex. Crim. App. 1985).

In order to be entitled to a hearing on a motion for new trial, the defendant must first have timely filed the motion no later than thirty days after the date when the trial court imposed or suspended the defendant's sentence in open court. Tex. R. App. P. 21.4(a). Additionally, the defendant must timely and actually present his motion for new trial to the trial court within ten days of filing the motion and must request that the court hold a hearing. Tex. R. App. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009); *see also Rozell*, 176 S.W.3d at 230. "Presenting the motion, along with a request for a hearing, is required to let the court know that the defendant wants the trial court to act on the motion and whether the defendant would like a hearing on the motion." *Rozell*, 176 S.W.3d at 230; *Stokes*, 77 S.W.3d at 21; *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998).

Further, "as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record," and to prevent fishing expeditions, a motion for new trial must be "supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim." *Smith*, 286 S.W.3d at 339; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The affidavit need not establish a prima facie case or contain every component that is legally required for the trial court to grant relief. *Chapa*, 407 S.W.3d at 431. However, the affidavit cannot be merely conclusory in nature; that is, it must present sufficient facts to provide "notice of the basis for the relief claimed[,]" and to illustrate why there may exist reasonable grounds entitling the defendant to such relief. *Smith*, 286 S.W.3d at 339.

In this context, a trial court has discretion only to determine whether the defendant has satisfied these procedural and substantive requirements; if the court

finds that the defendant's motion for new trial meets the above criteria, the court has no discretion to withhold a hearing on the motion. *Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011); *Smith*, 286 S.W.3d at 340.

An appellate court reviewing a trial court's decision not to hold a hearing on a motion for new trial may reverse that ruling "only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Smith*, 286 S.W.3d at 339–40. We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

### 2. DEFENDANT'S MOTION FOR NEW TRIAL

On November 12, 2018, represented by appellate counsel, appellant filed a motion for new trial and motion in arrest of judgment. Appellant asserted two grounds in support of his motions: (1) whether the trial court erred in denying appellant's motion for continuance, and (2) whether the trial court erred in denying appellant's motion for mistrial. Within the motion, appellant asserted that "[b]ecause this motion raises matters not determinable from the record, this Court should hold, and the Defendant requests, a hearing on these matters. . . ." Appellant's motion was overruled as a matter of law. *See* Tex. R. App. P. 21.8(c).

### 3. EVIDENCE OF PRESENTMENT

Presentment of a motion for new trial may be accomplished in several ways, including by obtaining: a ruling on the motion for new trial from the trial court, the judge's signature or notation on a proposed order, a hearing date set on the court's docket, or some notation or other writing indicating that the motion was actually

presented to the trial court. *Stokes*, 77 S.W.3d at 22–25; *Carranza*, 960 S.W.2d at 79.

The Texas Court of Criminal Appeals repeatedly has explained that merely filing a motion for new trial is insufficient, alone, to show presentment. *Stokes*, 277 S.W.3d at 21; *Carranza*, 960 S.W.2d at 78. Further, defense "counsel's statement that a motion for new trial has been presented is not enough to show presentment . . . ." *Rodriguez v. State*, 425 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Rather, "the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court." *Carranza*, 960 S.W.2d at 79.

Here, the record is devoid of evidence of actual presentment. There is only a docket sheet entry showing that the motion for new trial was filed and a "Certificate of Presentment" signed by his appellate counsel stating that the motion was emailed to the trial court coordinator. The Court of Criminal Appeals and our court have routinely held that this is insufficient to demonstrate presentment. *See Carranza*, 960 S.W.2d at 79–80 (affirming that the trial court did not err in failing to conduct a hearing on the defendant's motion for new trial when there was insufficient evidence of presentment); *Rodriguez*, 425 S.W.3d at 663 (holding that there was insufficient proof of presentment when the record contained only a "Notice of Presentment" signed by defense counsel); *Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (concluding that the trial court did not abuse discretion in denying motion for new trial by operation of law because motion was not properly presented, despite that a "Notice of Presentment" was filed and the docket sheet contained an entry that the motion was filed). Likewise, our sister courts also have found this inadequate to show presentment. *Bearnth v. State*, 361

16

S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("We cannot conclude that the presentment requirement was satisfied where the record shows only defense counsel's statement that the motion had been presented, but does not indicate that counsel in fact communicated the request for a hearing in a timely manner to a person capable of acting on it."); *Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.) (finding a certificate of presentment and docket entry noting the filing of the motion were insufficient evidence of presentment).

Because there is a lack of evidence in the record to show that appellant's motion for new trial was ever brought to the trial court's attention, the trial court did not err in refusing to hold a hearing on the motion. *See Longoria*, 154 S.W.3d at 762. We overrule appellant's second issue.

## D.   CHARGE ERROR

In his third issue, appellant maintains that the trial court erred in allowing the inclusion of the "lesser-included offense of assault (family member, second offense) in the jury charge."

Appellant was indicted on the second-degree felony offense of domestic-violence assault by causing bodily injury to a person with whom appellant had a dating relationship, that appellant caused the bodily injury by strangling the complainant, and that appellant has a prior conviction for domestic-violence assault. *See* Tex. Penal Code § 22.01(b-3). The State requested an instruction on the lesser-included third-degree offense of assault of a family member second, which was granted by the court. *See* Tex. Penal Code § 22.01(b)(2)(A). Defense counsel objected. The jury convicted appellant of the offense of the second-degree felony offense of assault of family member second and impeding breathing.

17

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011)). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado*, 235 S.W.3d at 249).

Evaluating alleged charge errors in the criminal context involves a two-step process. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We first determine whether the charge was erroneous. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If there was error, we then review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.*

If jury charge error is preserved with a timely objection, as here, reversal is required if the appellant suffered "some harm" as a result of the error. *Mendez*, 545 S.W.3d at 552 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). This means that "the presence of any harm, regardless of degree, . . . is sufficient to require a reversal." *Chambers v. State*, 280 S.W.3d 149, 154 (Tex. Crim. App. 2019) (quoting *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)). Appellant must have suffered some actual—rather than merely theoretical—harm. *Id.* (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). In

making this determination, we must consider "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Spiers v. State*, 543 S.W.3d 890, 898 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (quoting *Reeves*, 420 S.W.3d at 816).

### 2.   THE INDICTMENT AND CHARGE

#### a.   INDICTMENT

The indictment alleged that appellant committed the second-degree felony offense of domestic-violence assault by causing bodily injury to a person with whom appellant had a dating relationship, that appellant caused the bodily injury by strangling the complainant, and that appellant has a prior conviction for domestic-violence assault. *See* Tex. Penal Code § 22.01(b-3). The specific language of the indictment,[5] at issue, tracks the statutory language as follows:

> . . .in Harris County, Texas, JEREMY HENDERSON, hereafter styled the Defendant, heretofore on or about FEBRUARY 13, 2017, did then and there unlawfully, intentionally and knowingly cause bodily injury to [the complainant], hereafter styled the Complainant, a person with whom the Defendant had a dating relationship, by impeding the normal breathing or circulation of the blood of the Complainant by applying pressure to the Complainant's throat AND applying pressure to the Complainant's neck.

> It is further presented that, before the commission alleged above, the Defendant, on MARCH 7, 2016, in the 209TH DISTRICT COURT of HARRIS County, Texas, in Cause number 1435390, was convicted of ASSAULT, which was committed against a member of the Defendant's family AND person with whom the Defendant had a dating relationship.

---

[5] The indictment also included the following two paragraphs related to punishment for repeat offenders which are not at issue here.

### b.  CHARGE

The jury charge tracked the indictment and Section 22.01(b-3) of the Penal Code by instructing the jurors to find appellant guilty of the second-degree-felony offense of "assault of a person with whom [appellant] had a dating relationship by choking-second, as charged in the indictment[,]" if they found all elements of that offense beyond a reasonable doubt that

> . . . in Harris County, Texas, on or about the 13th day of February, 2017; the defendant, Jeremy Henderson, did then and there unlawfully, intentionally or knowingly cause bodily injury to [the complainant], a person with whom the defendant had a dating relationship, by impeding the normal breathing or circulation of the blood of [the complainant] by applying pressure to [the complainant's] neck and applying pressure to [the complainant's] throat.

> If you further find from the evidence beyond a reasonable doubt that the defendant had heretofore been convicted of the offense of assault, which was committed against a member of the defendant's family, to-wit, on March 7, 2016, in the 209th District Court of Harris County, Texas, in Cause No. 1435390, convicted of the offense of assault, which was committed against a member of the defendant's family, then you will find the defendant guilty of assault of a person with whom the defendant had a dating relationship by choking— second, as charged in the indictment.

The charge also included an instruction on the lesser third-degree offense of assault of a family member second.[6]

> . . .if you find from the evidence beyond a reasonable doubt that on or about the 13h day of February, 2017, in Harris County, Texas, the defendant, Jeremy Henderson, did then and there unlawfully, intentionally or knowingly cause bodily injury to [the complainant], a person with whom the defendant has a dating relationship, by applying pressure to [the complainant's] neck, and if you further find from the

---

[6] *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (listing the elements of third-degree felony assault of a family member by causing bodily injury, with a prior family-violence assault conviction).

20

evidence beyond a reasonable doubt that the defendant had heretofore been convicted of the offense of assault, which was committed against a member of the defendant's family, to-wit, on March 7, 2016, in the 209th District Court of Harris County, Texas in Cause No. 1435390, convicted of the offense of assault, which was committed against a member of the defendant's family, then you will find the defendant guilty of assault of a family member second.

### 3. DEFENSE COUNSEL'S OBJECTION AT TRIAL

During the jury charge conference at the conclusion of the guilt-innocence phase of trial, trial counsel objected to the inclusion of a lesser-included offense instruction concerning the third-degree felony variant of domestic-violence assault as follows:

> DEFENSE COUNSEL:  . . .In an abundance of caution, I would object to the inclusion of the lesser in the jury charge at all.  Because I think the law is that if a lesser included offense is going to be included, there has to be evidence that Mr. Henderson is guilty only of the lesser under Roister and Russo (phonetic) (sic) in that line of cases.[7]  So I would object to the lesser being included at all.

### 4. HARM ANALYSIS

Assuming, without deciding, that charge erroneously instructed the jury on the third-degree felony domestic-violence assault with a prior domestic-violence conviction, the question is whether the appellant was harmed.  Here, because

---

[7] A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007); *see also Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  When the State requests a jury instruction on a lesser-included offense, the trial judge should submit a jury instruction when the lesser-included offense is included within the proof necessary to establish the offense charged. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009); *Sifuentes v. State*, 494 S.W.3d 806, 818–19 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (recognizing State is no longer bound by the second prong of the *Royster–Rousseau* test).

appellant objected to this aspect of the charge, we review the entire record for "some harm." *Mendez*, 545 S.W.3d at 552; *Almanza*, 686 S.W.2d at 171.

Considering the jury charge as a whole, the arguments of counsel, and the sufficiency of the evidence in this case, the entirety of the record establishes that appellant was not harmed, even if the trial court erred in instructing the jury on the lesser-included, third-degree variety of domestic-violence assault, because the jury convicted appellant of the greater, charged offense. In doing so, the jury implicitly rejected the lesser option and concluded, instead, that the state of the evidence established beyond a reasonable doubt appellant's guilt for the second-degree felony version of the crime, as alleged in the indictment. Accordingly, the presence of the lesser-included offense instruction did nothing to affect the jury's deliberations and was not otherwise harmful in anyway. Thus, we conclude there was no actual harm in the submission of the lesser-included instruction.

For these reasons, we conclude any error was harmless because appellant did not even suffer "some harm." We overrule appellant's third issue.

## E.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, appellant asserts that his trial counsel rendered ineffective assistance when trial counsel failed to object to the introduction of appellant's 2016 prior conviction for assault (family member). Appellant argues the prior offense was a punishment-phase enhancement and did not need to be proven in the guilt/innocence phase of trial. On this basis, appellant argues that "no sound trial strategy justified the introduction of this irrelevant and highly prejudicial evidence without objection."

22

## 1. STANDARD OF REVIEW

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prove a claim of ineffective assistance, an appellant must establish, by a preponderance of the evidence, that (1) his counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. When the record is silent regarding trial counsel's strategy, as here, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel.

23

*Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Id*. at 483 (quoting *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). Counsel's performance is judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *Id*.; *accord Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). The *Strickland* court cautioned us to avoid an intrusive post-trial inquiry into attorney performance because such an inquiry would encourage the proliferation of ineffectiveness challenges. *Robertson*, 187 S.W.3d at 483 (citing *Strickland*, 466 U.S. at 690).

To that end, we are instructed that, for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez*, 343 S.W.3d at 142. The Texas Court of Criminal Appeals further advises, "[w]hen such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id*. at 143.

## 2. DEFENSE COUNSEL'S PERFORMANCE WAS NOT DEFICIENT

Appellant maintains that his prior 2016 conviction for felony assault (family violence) was a punishment-enhancement provision only, as opposed to a substantive element of the charged offense, and, as such, the judgment concerning the prior 2016 conviction was admissible only in the punishment phase of trial. In this regard, appellant maintains that his trial counsel performed deficiently in failing to file pretrial motions or object to evidence of the prior conviction during the guilt/innocence phase of trial.

24

Here, the record is silent as to his attorney's trial strategy. As previously discussed, the record in this case lacks evidence of presentment of a motion for new trial; thus, no hearing was conducted to explore defense counsel's reasoning and trial strategy. Moreover, even if proper presentment had been made, appellant's motion for new trial did not include allegations of deficient representation. Thus, to the extent appellant's trial counsel provided an affidavit to respond to other concerns appellant posed in appellant's motion, his trial counsel did not address the admissibility of the State's evidence concerning appellant's prior domestic violence assault conviction.

Appellant's claim of ineffective assistance of counsel is inherently a matter of trial strategy. Failure to object to inadmissible extraneous-offense evidence can constitute a plausible trial strategy. *See, e.g., Heiman v. State*, 923 S.W.2d 622, 626 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding it was within the scope of plausible trial strategy that trial counsel failed to object to extraneous offense because the record showed trial counsel's strategy was to challenge the complainant's credibility). In this case, the record before us suggests that undermining the complainant's credibility was a critical component of trial counsel's strategy. In cross-examining the complainant and making closing argument to the jury, trial counsel emphasized inconsistencies in the complainant's testimony. For these reasons, we cannot conclude from the silent record before us that trial counsel's failure to object to the 2016 prior conviction constituted ineffective assistance of counsel.

To know defense counsel's reasoning concerning the aforementioned matters would require us to speculate, which we cannot do. *Jackson*, 877 S.W.2d at 771. Without affirmative evidence in the record to overcome the presumption of reasonable assistance, we are not persuaded by appellant's claim of ineffective

assistance of counsel. Under these circumstances, appellant has failed to show his trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Because appellant has failed to satisfy the first prong of the *Strickland* test, we overrule appellant's fourth issue.

## F. DENIAL OF MOTION FOR MISTRIAL

In his fifth issue, appellant argues that the trial court erred in denying his motion for mistrial when it was discovered that an alternate juror was present in the jury deliberation room during the jury's guilt-phase deliberations, had participated in the jurors' deliberations, and had voted with the primary jurors to convict appellant.

### 1. RELEVANT FACTS

The guilt-innocence phase of appellant's trial concluded during the second day of testimony. The jury returned with a guilty verdict, which the trial court accepted; the trial court immediately began the punishment phase of trial. The State rested, and the trial court recessed for the evening. The following morning, on October 11, 2018, the trial court informed the parties of the following:

> THE COURT: So we're on the record outside the presence of the jury.
>
> It was brought to my attention last evening that the alternate was in the deliberations. And although the jury was not polled and the Court did accept the verdict, here's what we're going to do. We're going to bring the jury back out, and I'm going to give them some very specific instructions that they are to disregard their guilt deliberations and begin anew. And then I'll poll each individual juror to make sure they understand my instructions. And then we'll segregate the alternate from the panel. That's what we're going to do.
>
> Is everybody clear on that?

26

The State lodged no complaint, but defense counsel expressed that he "may have a motion about it" depending on what the jurors said while the trial court polled them and gave them new instructions.

The trial court then brought the jurors into the courtroom, and gave them the following instructions:

> THE COURT: All right. Could [name of alternate juror] raise your hand?
>
> All right. Ma'am, you are the alternate on the jury. I want to make sure you know that. You were the last on the panel.
>
> Now, ladies and gentlemen, I do have a very specific instruction for each and every one of you. You are all instructed at this time to disregard your deliberations that you have done in the verdict form that you signed.
>
> We are going to separate [name of alternate juror], place her in a different room. You are instructed to disregard your deliberations completely and begin anew just like you haven't deliberated at all. And we're going to make sure that [alternate juror] is in a different room so she is not participating in any of the deliberations.
>
> Does everyone understand that? Do you understand specifically my instructions? So I'm going to poll each and every one of you. And answer yes if you will follow my order and my instruction.

The trial court polled each juror, and each juror answered in the affirmative that they would follow the trial court's instructions.

In a bench conference following this exchange, defense counsel moved for a mistrial.

> [DEFENSE COUNSEL]: At this time, we're going to move for a mistrial for the outside influence in the jury deliberation room at the guilt/innocence phase of this trial. I'm going to request to be able to request the alternate juror to establish on the record that she did indeed participate in the deliberations.

The trial court denied counsel's motion and sent the twelve primary jurors to re-deliberate appellant's guilt or innocence; however, the trial court granted defense counsel's request to question the alternate juror to make an offer of proof and "establish on the record that she did indeed participate in the deliberations." During this questioning by both defense counsel and the State, the alternate juror stated that she accompanied the twelve primary jurors into the jury deliberation room at the close of the guilt/innocence phase of trial; she participated in the jurors' deliberations and discussion of the facts and evidence of the case; and she voted that appellant was guilty of the charged offense.

At the conclusion of the questioning, defense counsel renewed his motion for mistrial:

> DEFENSE COUNSEL: We renew our motion for a mistrial, Your Honor.
> THE COURT: Respectfully denied.
>     We have a verdict. The jury deliberated from 8:50 a.m. to 9:42 a.m.

The twelve jurors returned a unanimous guilty verdict. Defense counsel reurged the motion for "reasons articulated earlier," which was denied.

## 2. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Id*. "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id*.

Because a mistrial is a serious remedy, it should be reserved for only "extreme circumstances" for a narrow class of prejudicial and incurable errors. *See Torres v. State*, 587 S.W.3d 503, 506 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Ocon*, 284 S.W.3d at 884). It may be used to end trial proceedings when faced with error so prejudicial that "expenditure of further time and expense would be wasteful and futile." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

Ordinarily, a trial court's instruction to disregard will cure any error committed. *See Wesbrook*, 29 S.W.3d at 115; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). "We generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). "[A] mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored." *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005).

### 3. PRESERVATION OF ERROR

On appeal, appellant asserts that the trial court erred in denying his motion for mistrial for because the alternate juror's participation in the jury's deliberations and vote-casting infringed upon appellant's right to have a jury comprised of only twelve persons under Article V, Section 13, of Texas Constitution.[8] Appellant also asserts the denial of the mistrial was in error because the trial court instructed the twelve jurors to redeliberate guilt after they had heard the State's case on punishment. At trial, however, appellant's motion for mistrial was based solely upon the "outside influence" prohibition contained in article 36.22 of the Texas Code of Criminal Procedure.[9] At no time did he argue any other basis for mistrial.

---

[8] Article V, section 13 of the Texas Constitution provides that "petit juries in the District Court shall be composed of twelve persons[.]" Tex. Const. art. V, § 13.

[9] Article 36.22 of the Texas Code of Criminal Procedure provides that "[n]o person shall

As shown by the record, appellant did not move for mistrial based on the theories he now asserts on appeal. He made no reference to any constitutional claim and he did not assert any harm in the twelve jurors redeliberating guilt after they had heard the State's case on punishment. Appellant may not now, for the first time on appeal, raise new legal bases as reasons to support trial court error in denying his motion for mistrial. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial."); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986) ("[I]f an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review."). By preserving only his assertion regarding the prohibition on outside influence as the sole basis for his motion for mistrial at trial, he waived our review of any additional arguments asserted now for the first time on appeal. We overrule appellant's fifth issue.

### III. CONCLUSION

The trial court's judgment is affirmed.


/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Wise, Jewell, and Poissant.
Do Not Publish – Tex. R. App. P. 47.2(b)

---

be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. art. 36.22. The primary goal of article 36.22 is to insulate jurors from outside influence. *Ocon*, 284 S.W.3d at 884.