**Affirmed and Memorandum Opinion filed August 12, 2021.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-19-00739-CR**

---

**MARLENE ALEXANDRIA JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 18-CR-2878**

## MEMORANDUM OPINION

Appellant Marlene Alexandria Jackson was convicted of harassment of a public servant, a third-degree felony. *See* Tex. Penal Code Ann. § 22.11(a)(3), (b). In two issues, appellant argues: (1) the trial court erred by overruling her objection to the jury charge; and (2) her conviction was not supported by legally sufficient evidence. We affirm.

# I.  BACKGROUND

Appellant's indictment alleged that on September 12, 2018, with the intent to assault, harass, or alarm, she caused her saliva to contact Judge Carlton Getty while he was discharging his official duty of reading magistrate warnings to her. *See id.*

## A.  TRIAL TESTIMONY

Jury trial began on August 19, 2019. Robert Wood testified that he performed bailiff duties in the municipal court. According to Wood, he took appellant from the Santa Fe jail to Judge Getty's office for magistration on September 12, 2018. Wood testified that the room had no cameras and that the only people with him in the room were appellant and Judge Getty. Wood said that when appellant was informed of the charges against her, she became angry. According to Wood, when Judge Getty reached his hand across the table to pull the papers back to him, appellant spat on the paperwork and Judge Getty's right hand. Wood claimed that appellant leaned forward and spat a single time.

Judge Getty testified that appellant spit on him immediately as he placed his hand on the paper. According to Judge Getty, the paper was in front of appellant for a minute or so before his hand was near the paper. Judge Getty claimed that if appellant wanted to spit only on the paper, she had ample opportunity to do so. Judge Getty testified that the spit landed on both the paper and his hand. He claimed that he was offended and harmed "psychologically" because he did not "know whether [he] ha[d] been infected with something or not."

Appellant admitted that she knew Judge Getty was a judge. She claimed that she never signed the paperwork; instead, she spit where her signature was supposed to go. She testified that she was surprised when Judge Getty alleged that she spit on him because that was not her intention. According to appellant, her spit must have bounced or jumped off the paper and hit his hand. Appellant testified

2

she was not angry at the time, but upset and crying, and that she was aiming to spit on the paper, but not at the judge.

At the conclusion of the trial testimony, the trial court noted that both sides submitted a proposed charge. The defense objected to the State's charge.

**B.      OBJECTION TO THE STATE'S PROPOSED JURY CHARGE**

The State's proposed jury charge contained the following three paragraphs:

> A person acts intentionally, or with intent, with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result.
>
> A person acts recklessly, or is reckless, with respect to the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint.

Appellant objected to these three paragraphs, arguing:

> I object to three paragraphs in the state's charge. The first paragraph is that one that begins on bottom of Page 1, defining intentionally and the top two paragraphs on Page 2, defining knowingly and recklessly. We object to those being included because this is a specific intent crime and those are general mental states. But beyond that, we have no other objections to the State's charge.

The State responded that the word "assault" is in the statute, and therefore had to

3

be defined.[1] The State argued that the charge further required the definitions of the mental states of intentionally, knowing, and recklessly, as the mental state were necessary to the assault charge. The State then argued, "And then the application paragraph correctly applies on the specific mental state, not intentionally, knowingly, or recklessly. So I think the charge as written complies with the statute and is really required to fully define assault for this jury." The trial court overruled appellant's objection.

The jury returned a guilty verdict and assessed punishment at three years' confinement in the Texas Department of Criminal Justice Institutional Division. Appellant timely filed this appeal.

## II. ANALYSIS

In two issues, appellant argues that (1) the trial court erred by overruling her objection to the jury charge and (2) there was legally insufficient evidence to support her conviction. We will address her sufficiency argument first.

### A. LEGAL SUFFICIENCY

#### 1. STANDARD OF REVIEW & APPLICABLE LAW

We apply a legal-sufficiency standard of review in determining whether the evidence supports each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136–37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We consider all

---

[1] *See* Tex. Penal Code Ann. § 22.11(a)(3), (b).

evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We will uphold the jury's verdict unless a rational factfinder must have had reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

We do not, however, re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the witness's credibility and the weight given their testimony, we resolve any evidentiary conflicts or inconsistencies in favor of the verdict. *See Isassi v. State*, 330 S.W.3d 633, 643 (Tex. Crim. App. 2010) ("As long as the jury's finding of a culpable intent 'is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable.'"); *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("The jury may choose to believe or disbelieve any portion of the witnesses' testimony.").

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge and as authorized in the indictment. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). "The 'law as authorized by the indictment' includes the statutory elements of the offense and

those elements as modified by the indictment." *Id.* (quoting *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013)). Our use of the hypothetically correct jury charge ensures a judgment of acquittal is reserved for cases in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge. *McCombs v. State*, 562 S.W.3d 748, 759 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Malik*, 953 S.W.2d at 240).

In this case, such a charge would state that appellant committed the offense of harassment of a public servant if, with the intent to assault, harass, or alarm, she caused Judge Getty, a person whom appellant knew to be a municipal judge, to contact her saliva while Judge Getty was lawfully discharging an official duty by reading magistrate warnings to appellant.[2]

## 2. APPLICATION

Appellant argues that the evidence as to intent was ambiguous and thus improperly invited the jury to speculate that she intentionally caused her saliva to contact Judge Getty.

Intent is rarely subject to direct evidence. *See Gomez v State*, 499 S.W.3d 558, 563 (Tex. App—Houston [1st Dist.] 2016, pet. ref'd). Thus, the question here is whether the jury could reasonably infer beyond a reasonable doubt, based on appellant's words, acts, and conduct, that she intentionally caused her saliva to contact Judge Getty with the intent to assault, harass, or alarm him. *See id.*

Testimony from Wood and Judge Getty established that appellant spat on Judge Getty's hand as he reached for the paper in front of appellant. Judge Getty testified that appellant had the opportunity to spit on only the paper, but she did not do so. Instead, according to Judge Getty, appellant spat on his hand immediately after he placed his hand on the paper. Both Wood and Judge Getty testified that

---

[2] *See id.*

appellant leaned forward as she spit and leaned back afterwards. Appellant contends that the salvia's contact with Judge Getty "was consistent with accident rather than specific intent." However, the evidence supported an inference that appellant acted intentionally in causing her saliva to contact Judge Getty.

Although initially denying she was angry, appellant later admitted during cross-examination that what was going through her mind at the time she spit that she was "pissed off" and "that it's bullshit." She testified she was initially told she was not going to be charged, but when she tried to speak about it, nobody cared; she was "angry at the charge." Appellant also admitted she was high on methamphetamine the night before, damaged the mat in her cell, threw wet toilet paper at the cell cameras, and said she did not know at the time that it was a felony to spit on a judge, knew now, and had a lot to lose if she did not deny intent.

It is within the province of the jury to make reasonable inferences from the evidence and to reject appellant's argument that her saliva contacted Judge Getty accidentally. *See Isassi*, 330 S.W.3d at 643. Appellant acknowledges that the jury was free to disregard her testimony. *See Bargas*, 252 S.W.3d at 887. Viewing the evidence in the light most favorable to the verdict, we conclude that legally sufficient evidence supports a reasonable inference that appellant intentionally caused her saliva to contact Judge Getty. *See Temple*, 390 S.W.3d at 360; *Isassi*, 330 S.W.3d at 643.

We overrule appellant's second issue.

**B.   JURY CHARGE ERROR**

We will now address appellant's first issue regarding jury charge error.

**1.   APPLICABLE LAW & STANDARD OF REVIEW**

In each felony case, the trial court shall deliver to the jury a written charge "distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. As law applicable to the case, "the definitions of words or phrases

defined by statute must be included in the jury charge." *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (noting that the jury must be instructed regarding statutory definitions affecting the meaning of an element of the offense).

In analyzing a jury charge issue, we first determine whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "Only if we find error do we then consider whether an objection to the charge was made and analyze for harm." *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If the alleged jury charge error was properly preserved, reversal is required if it is shown that the error caused some harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

2.  **APPLICATION**

Appellant argues that the trial court erred by including definitions of general mental states in the jury charge. However, the "definitions of words or phrases defined by statute must be included in the jury charge." *Arteaga*, 521 S.W.3d at 334. The jury charge in the present case set out the harassment of a public servant statute, which contains the word "assault." *See* Tex. Penal Code Ann. § 22.11(a). As applicable here, assault is an element of the offense and is statutorily defined as "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* § 22.01(a)(3). Even though not applicable to the elements of the charged offense, "recklessly" is included under another definition of "assault." *Id.* § 22.01(a)(1). "Intentionally," "knowingly," and "recklessly" are all statutorily defined. *See id.* § 6.03(a)-(c). Thus, the trial court did not err by including the definitions of "intentionally," "knowingly," and "recklessly" in the jury charge. *See id.* §§ 6.03, 22.01(a); *Arteaga*, 521 S.W.3d at 334; *Ngo*, 175

S.W.3d at 743.

Even assuming, arguendo, that there was error, appellant has not demonstrated that she was harmed. *See Ngo*, 175 S.W.3d at 743. The application paragraph of the jury charge properly tracked the indictment and the Texas Penal Code. *See* Tex. Penal Code Ann. § 22.11(a). Although the abstract portion of the charge included definitions of assault which did not correlate to the conduct elements of the present offense, the application paragraph did not apply those definitions. During trial, the State suggested or inferred that appellant could be convicted absent a finding of specific intent. During closing argument, appellant emphasized that specific intent was required to convict her; the State did not object. Instead, the State argued in its closing argument that appellant had the specific intent of spitting on Judge Getty. And in response to the multiple notes sent to the court from the jury to which the judge responded, "refer to the charge," the jury quickly returned a unanimous verdict. Based on the evidence, the arguments, the jury charge, and the entirety of the case, there is no showing of harm to appellant. *See Reeves*, 420 S.W.3d at 816.

We overrule appellant's first issue.

### III.   CONCLUSION

We affirm the trial court's judgment.


/s/      Margaret "Meg" Poissant
Justice


Panel consists of Justices Jewell, Poissant, and Wilson.
Do Not Publish — Tex. R. App. P. 47.2(b).

9